UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

INTERNATIONAL LEISURE PRODUCTS, INC.,

                    Plaintiff,

      -against-

FUNBOY LLC,

                    Defendant.

----------------------------------------------------------------X

FILED
CLERK
1:27 pm, Nov 09, 2017
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

ORDER
16-CV-4667(SJF)(AYS)

FEUERSTEIN, District Judge:

## I.  Introduction

On August 22, 2016, plaintiff International Leisure Products, Inc., d/b/a "Swimline," ("plaintiff" or "ILP") commenced this action against Funboy LLC ("defendant" or "Funboy"), asserting claims, *inter alia*, for trade dress infringement, false designation of origin, unfair competition and dilution under Sections 43(a) and (c) of the Lanham Act, 15 U.S.C. §1125(a) and (c).  On September 9, 2016, plaintiff filed an amended complaint against defendant, and on February 9, 2017, plaintiff filed a second amended complaint against defendant. Pending before the Court is defendant's motion to dismiss plaintiff's claims against it in the second amended complaint in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.   For the reasons set forth below, defendant's motion is granted to the extent set forth herein and plaintiff's claims are dismissed in their entirety with prejudice.

II.     Background

     A.     Factual Allegations[1]

For more than nine (9) years, plaintiff has manufactured and sold inflatable swimming

pool products under the "GIANT SWAN™" brand, (Second Amended Complaint ["SAC"], ¶ 7),

and its "GIANT SWAN™" inflatable swimming pool products "are widely sold in retail and

online outlets across the country." (*Id.*)

In or around 2007, plaintiff "introduced the GIANT SWAN™ inflatable swan

pool toy[,]" which "has consistently been a market leader in the field." (SAC, ¶ 9). "[S]ince its

introduction, [plaintiff] has built substantial brand awareness and goodwill in its GIANT

SWAN™ inflatable swan and other pool toys through, among other things, extensive advertising,

promotional efforts and sales as aforesaid." (*Id.*; *see also Id.*, ¶ 21). Plaintiff has invested more

than one million dollars ($1,000,000.00) "in advertising and promoting its GIANT SWAN™

inflatable swan pool toy since its launch[,]" and has invested more than one million three

hundred thousand dollars ($1,300,000.00) "in advertising and promoting its GIANT SWAN™

pool toy product line." (*Id.*, ¶ 9). In addition, plaintiff "has made significant investment in

research and development to develop an inflatable pool toy product design and corresponding

packaging with ornamental features that are distinctive, memorable and appealing to consumers."

(*Id.*, ¶ 20).

Plaintiff "has used a distinctive fanciful portrayal of *various* facial and other body

---

[1]  The factual allegations in the second amended complaint are assumed to be true for purposes of this motion, "unless contradicted by more specific allegations or documentary evidence," *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011), and do not constitute findings of fact by the Court.

features as proprietary Trade Dress in the advertising, packaging and indication of source for its

GIANT SWAN™ inflatable swan pool toy, and its inflatable pool toy product line."  (SAC, ¶ 8)

(emphasis added).  "Substantial brand awareness and goodwill in GIANT SWAN™ Trade Dress

has resulted due, among other things, to extensive advertising and promotional efforts, and

extensive sales."  (*Id.*)  "GIANT SWAN™ inflatable pool toy products have been advertised

through major media outlets in the United States, including the Internet, magazines, catalogs and

the advertising of its many distributors, such as Amazon."  (*Id.*)

Plaintiff's "GIANT SWAN™ inflatable pool toy product line comprises inflatable

swimming pool toy products incorporating the GIANT SWAN™ Trade Dress, . . . including

*inter alia* inflatable swans of *different sizes and colors*, inflatable *flamingoes, ducks, toucans,*

*parrots and eagles*."  (SAC, ¶ 10) (emphasis added).  "The GIANT SWAN™ inflatable pool toy

product line generates at least $6 million in sales per year[,]" and the "GIANT SWAN™

inflatable swan pool toy accounts for roughly 50% of those sales per year."  (*Id.*)

Plaintiff "is the owner of all right, title and interest in the highly distinctive GIANT

SWAN™ Trade Dress that it uses in promoting and selling its inflatable swimming pool toy

products, including [its] GIANT SWAN™ inflatable swan pool toy."[2]  (SAC, ¶ 11).  Plaintiff's

---

[2]  Plaintiff's conclusory allegations, *e.g.*, that "[t]he GIANT SWAN™ Trade Dress
comprises fanciful elements that individually and in combination create an overall distinctive
appearance that is readily identifiable by consumers as signifying a product originating with
[plaintiff] and/or associated with the GIANT SWAN™ brand[,]" (SAC, ¶ 11); that "[t]he GIANT
SWAN™ Trade Dress elements are non-functional, as they are not essential (even from an
aesthetic standpoint) to the use, purpose, cost or quality of the inflatable pool toy product[,]" (*id.*,
¶ 15); that "[t]he GIANT SWAN™ Trade Dress, . . . is not functional, but rather is decorative,
distinctive and serve [sic] as a source identifier[,]" (*id.*, ¶ 19); that "[b]y infringing ILP's GIANT
SWAN™ Trade Dress, Funboy has made, promoted, distributed and sold inflatable swan and
other pool toy products in a way that has caused cause [sic], and will in the future cause, a
likelihood of confusion among consumers[,]" (*id.*, ¶ 29); that defendant's alleged infringement

"Trade Dress is incorporated directly in the inflatable swimming pool products marketed under the GIANT SWAN™ brand, depicted in advertising of the products, and displayed on the packaging that [it] has used for its GIANT SWAN™ inflatable swan pool toy product." (*Id.*, ¶ 12).

Plaintiff identifies its "GIANT SWAN™ Inflatable Swan Trade Dress" by reference to an image depicting a mostly white inflatable pool float ostensibly resembling a bird, "possibly . . . a swan," (SAC, ¶ 14(c)), and alleges that "the GIANT SWAN™ Trade Dress" comprises the following seven (7) elements: (i) "the *circular or elliptical* periphery and recessed interior configuration of the inflatable base with a height in proportion to the circumference of the base to provide a pleasing appearance[,]" (*id.*, ¶ 14(a)) (emphasis added); (ii) "the substantially vertical inclination and straight line of the 'neck' portion projecting from the periphery of the base, the neck having a particular thickness and height to be in aesthetic proportion to the base[,]" (*id.*, ¶ 14(b)); (iii) "the stylized depiction of the head including the face of a bird, possibly resembling a swan, wherein the stylized countenance has two eyes each having a dark periphery and a light or white center, and a bill or beak surrounded by a shaped border that merges with the periphery of the eyes[,]" (*id.*, ¶ 14(c)); (iv) "the elongated tubular shape of the stylized appendages located on opposite sides of the base, with a height and thickness in aesthetic proportion to the base and *optional* horizontal arcing lines, the stylized appendages being instead of a bird's wings and also *optionally* having a generally conical upwardly inclined protuberance[,]" (*id.*, ¶ 14(d)) (emphasis

---

"has had, and will have, the effect of causing the public to believe, inaccurately, that the Funboy products are somehow connected with the source of ILP's pool toy products, thereby causing confusion," (*id.*), etc., are not entitled to the assumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Vedder Software Grp. Ltd. v. Insurance Servs. Office, Inc.*, 545 F. App'x 30, 33 (2d Cir. Oct. 18, 2013) (summary order).

added); (v) "the conical shape of the tail, and the substantially upward inclination of that conical shape from the periphery of the base at the end opposite that from which extends from the neck[,]" (*id.*, ¶ 14(e)); (vi) "a signature color scheme with *white, black, gold or pink* coloration of the body, orange coloration of the bill/beak and the described coloration of other facial features[,]" (*id.*, ¶ 14(f)) (emphasis added); and (vii) "an overall smooth and flexible texture."[3] (*Id.*, ¶ 14(g)).

Plaintiff paradoxically alleges that "[t]he GIANT SWAN™ Trade Dress has . . . acquired secondary meaning at least to the extent that it has become copied by many competitors in the inflatable pool product market[,]" (SAC, ¶ 16); and that its "GIANT SWAN™ Trade Dress is a unique and distinctive identifiers [sic] of the source and high quality of [its] inflatable pool toy products."  (*Id.*, ¶ 27).

Defendant manufactures and sells inflatable swimming pool products "in at least online outlets," under the brand name "Funboy™," (SAC, ¶ 22), including inflatable pool floats designed to resemble swans in multiple colors, *i.e.*, an "Inflatable White Swan Pool Float" and an "Inflatable Black Swan Pool Float," as well as other flying animals, such as a flamingo and a "Pegasus," *i.e.*, a fictional flying horse.  (*Id.*).  Plaintiff alleges that defendant's "inflatable swan pool toy products are replicas of [its] inflatable swan pool toy products, and copy nearly every

---

[3]  Plaintiff also refers to its "GIANT SWAN™ packaging Trade Dress" in the second amended complaint by referring to an image depicting the packaging in which its inflatable swan pool float is sold, (SAC, ¶ 17), and alleging that its "GIANT SWAN™ packaging Trade Dress" comprises the following three (3) elements: (i) "one of *at least three* distinctive *versions* of GIANT SWAN™ Trade Dress is visible[,]" (*id.*, ¶ 18(a)) (emphasis added); (ii) "the GIANT SWAN™ brand name on the top portion of the front panel, with the words 'GIANT SWAN' in white text on a blue background[,]" (*id.*, ¶ 18(b)); and (iii) "the GIANT SWAN™ brand name on the side panels."  (*Id.*, ¶ 18(c)).  However, plaintiff does not assert any claim against defendant with respect to its "GIANT SWAN™ packaging Trade Dress."

distinctive feature of  the GIANT SWAN™ Trade Dress," and references an image of

defendant's purportedly infringing product which depicts a mostly white inflatable pool float

ostensibly resembling a swan.  (*Id.*, ¶ 25).  Specifically, plaintiff alleges that defendant's

"inflatable swan pool toy products infringe the GIANT SWAN™ Trade Dress in at least in [sic]

as much as they feature a swan design incorporating: [i] a circular or elliptical inflatable base

with a recessed interior, the base being of a height in proportion to the circumference of the base

to provide a pleasing appearance," (*id.*, ¶ 26(a)); (ii) "an upright 'neck' portion placed on the

periphery of the base, the neck having a particular thickness and height in aesthetic proportion to

the base," (*id.*, ¶ 26(b)); (iii) "the neck also having on its upper end a stylized depiction of the

head and face of a swan, the head and face further consisting of two dark-edged eyes and a dark

bordered bill or beak with the dark edging of the eyes flowing into the dark border of the bill or

beak," (*id.*, ¶ 26(c)); (iv) "two stylized appendages located on opposite sides of the base, the

appendages being generally of an elongated, tubular shape with a height and thickness in

aesthetic proportion to the base, the stylized appendages being instead of a bird's wings," (*id.*, ¶

26(d)); (v) "a conical protuberance extending upwardly from the circumference of the base

opposite to the neck," (*id.*, ¶ 26(e)); (vi) "a color scheme like [plaintiff's]," (*id.*, ¶ 26(f)); and (vii)

"an overall smooth and flexible texture."  (*Id.*, ¶ 26(g)).


B.    Procedural History

On August 22, 2016, plaintiff commenced this action against defendant asserting claims,

*inter alia*, for trade dress infringement, false designation of origin, unfair competition and

dilution under Sections 43(a) and (c) of the Lanham Act, 15 U.S.C. § 1125(a) and (c).  On

6

September 9, 2016, plaintiff filed an amended complaint against defendant, and on February 9,

2017, plaintiff filed a second amended complaint against defendant.  Plaintiff asserts the

following federal law causes of action in the second amended complaint: (i) that defendant's

"manufacture and distribution of its inflatable swan and *other pool toy products* that simulate the

GIANT SWAN™ Trade Dress is likely to cause confusion, or to cause mistake, or to deceive as

to affiliation, connection or association of [defendant] with [plaintiff] or as to the origin,

sponsorship, or approval by [plaintiff] of [defendant's] goods, services or commercial

activities[,] . . . [and] enable[s] [defendant] to benefit unfairly from the reputation and success of

[plaintiff's] products and source indicative trade dress, thereby giving [defendant's] products in

issue commercial value that they would not otherwise have[,]" in violation of Section 43(a) of

the Lanham Act, 15 U.S.C. § 1125(a) (first cause of action for trade dress infringement), (SAC,

¶¶ 35-37) (emphasis added); (ii) that defendant's challenged acts "constitute false designation of

origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)" (second cause of

action), (*id.*, ¶ 41); and (iii) that defendant's "manufacture, distribution and sale of inflatable

swan and *other pool toy products* that simulate the GIANT SWAN™ Trade Dress[,]" (a)

"enables [it] to benefit unfairly from the reputation and success of [plaintiff's] products and

source indicative trade dress, thereby giving [defendant's] products in issue commercial value

that they would not otherwise have[,]" which constitutes unfair competition in violation of

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)" (third cause of action), (*id.*, ¶¶ 45-46)

(emphasis added), and (b) "is likely to dilute the distinctiveness of [plaintiff's] GIANT SWAN™

Trade Dress[,]" and "constitute[s] dilution by blurring, in violation of Section 43(c) of

the Lanham Act, 15 U.S.C. §1125(c)" (fourth cause of action).  (*Id.*, ¶¶ 51-52).  Plaintiff also

asserts state law claims for trademark infringement in purported violation of "N.Y. Gen. Bus. Law §§ 360 *et seq.* and § 360-o" (fifth cause of action) (*id.*, ¶ 59); dilution in purported violation of "N.Y. Gen. Bus. Law §360-e," (sixth cause of action) (*id.*, ¶ 66); and unjust enrichment (seventh cause of action).  Plaintiff seeks injunctive relief, treble damages, an accounting to determine defendant's profits  "resulting from its and its affiliates' unlawful activities," an order directing "that such profits be paid over to [plaintiff], increased as this Court finds to be just under the circumstances of this case[,]" punitive damages and attorney's fees and costs, together with prejudgment and post-judgement interest.  (*Id.* at 16-19).

Defendant now moves to dismiss plaintiff's claims against it in the second amended complaint in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.

III.     Discussion

A.     Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  However, this tenet "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S. Ct. 1937.  "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*; *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-1 (2d Cir. 2010); *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729-30 (2d Cir. 2013).  "When there are

9

well-pleaded factual allegations, a court should assume their veracity and then determine whether

they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,

the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any

documents attached to the complaint as exhibits or incorporated by reference therein; to matters

of which judicial notice may be taken; or to documents upon the terms and effect of which the

complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers*

*v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*,

756 F.3d 191, 198 (2d Cir. 2014).


B.      Claims under Section 43(a) of the Lanham Act

Section 43(a)(1) of the Lanham Act provides, in pertinent part:

> "Any person who, on or in connection with any goods . . . uses in commerce any
> word, term, name, symbol, or device, or any combination thereof, or any false
> designation of origin, . . . which–  (A) is likely to cause confusion, or to cause
> mistake, or to deceive as to the affiliation, connection, or association of such
> person with another person, or as to the origin, sponsorship, or approval of his or
> her goods, services, or commercial activities by another person, . . . shall be liable
> in a civil action by any person who believes that he or she is or is likely to be
> damaged by such act."

15 U.S.C. § 1125(a)(1).  Section 43(a)(3) of the Lanham Act provides, "In a civil action for trade

dress infringement under this chapter for trade dress not registered on the principal register, the

person who asserts trade dress protection has the burden of proving that the matter sought to be

protected is not functional." *Id.*, § 1125(a)(3).

"A product's trade dress encompasses the overall design and appearance that make the

10

product identifiable to consumers." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001). "Trade dress originally included only the packaging, or 'dressing,' of a product, but it has been expanded to encompass . . . the design or configuration of the product itself." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir 2001) (quotations and citations omitted); *see also L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co., Inc.*, 79 F.3d 258, 262 (2d Cir. 1996) ("Although trade dress once referred only to the manner in which a product was 'dressed up' to go to market with a label, package, display card, and similar packaging elements, the concept now includes the design and appearance of the product as well as that of the container. . . . It is essentially the total image and overall appearance of a product." (quotations, brackets and citations omitted)).

"The principal purpose of federal trademark law is to secure the public's interest in protection against deceit as to the sources of its purchases, and the businessman's right to enjoy business earned through investment in the good will and reputation attached to a trade name." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012) (quotations, alterations and citation omitted); *see also Nora Beverages*, 269 F.3d at 119 ("When evaluating [trade dress] claims, courts must not lose sight of the underlying purpose of the Lanham Act, which is protecting consumers and manufacturers from deceptive representations of affiliation and origin." (quotations and citation omitted)). "Nevertheless, trademark law is not intended to protect innovation by giving the innovator a monopoly over a useful product feature." *Christian Louboutin*, 696 F.3d at 215 (quotations, alterations and citation omitted); *see also Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 33 (2d Cir. 1995) (holding that the purpose of trade dress law is "to protect an owner of a dress in

11

informing the public of the source of its products, without permitting the owner to exclude

competition from functionally similar products.")  "Trade dress protection must subsist with the

recognition that in many instances there is no prohibition against copying goods and products. In

general, unless an intellectual property right such as a patent or copyright protects an item, it will

be subject to copying." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 121 S. Ct.

1255, 1260, 149 L. Ed. 2d 164 (2001)); *see also Best Cellars, Inc. v. Wine Made Simple, Inc.*,

320 F. Supp. 2d 60, 69 (S.D.N.Y. 2003) ("The text of the statute makes clear that the Lanham

Act is not intended to enable monopolistic use of a commercial idea, but rather aims to guard

against confusion in the marketplace that would harm both buyers and sellers.")

     To state a claim for trade dress infringement involving product design, the plaintiff must

allege: "(1) that the mark is distinctive as to the source of the good, [] (2) that there is a

likelihood of confusion between its good and the defendant's [product][,]" *Yurman Design*, 262

F.3d at 115; *accord Forschner Grp., Inc. v. Arrow Trading Co., Inc.*, 124 F.3d 402, 407 (2d Cir.

1997), and (3) that the "unregistered trade dress is 'not functional.'" *Yurman Design*, 262 F.3d at

116; *see also TrafFix Devices*, 532 U.S. at 29, 121 S. Ct. 1255 ("[T]rade dress protection may

not be claimed for product features that are functional."); *Two Pesos, Inc. v. Taco Cabana, Inc.*,

505 U.S. 763, 769, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992) ("[E]ligibility for protection under

§ 43(a) [of the Lanham Act] depends on nonfunctionality.")  "A plaintiff must also offer 'a

precise expression of the character and scope of the claimed trade dress[,]'" *Sherwood 48 Assocs.

v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. Sept. 29, 2003) (summary order) (quoting

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)), "and

articulate the elements of their product design with specificity to be afforded trade dress

protection." *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 593 (E.D.N.Y. 2017) (quotations and citation omitted); *see also Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017) (holding that the complaint must articulate "which of the plaintiff's trade design elements are distinctive and how they are distinctive."); *Tracey Tooker & TT Ltd., Inc. v. Whitworth*, 212 F. Supp. 3d 429, 434 (S.D.N.Y. 2016) (holding that the plaintiff must specify in the complaint "both which features are distinctive and how they are distinctive." (emphasis, quotations and citation omitted)); *R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39, 77 (S.D.N.Y. 2009) ("[A] plaintiff must provide a sufficiently specific articulation of the common distinctive elements of the product line's trade dress rather than sweeping, overly general descriptions that essentially corner the market on an idea. Merely pointing to pictures of a product line will not suffice.")  "The identification of design elements that compose the asserted trade dress . . . assist[s] in winnowing out claims that are overbroad as a matter of law[,]" *Yurman Design*, 262 F.3d at 117, and "a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea." *Landscape Forms*, 113 F.3d at 381.

Similarly, in order to state either an unfair competition claim or a false designation of origin claim under Section 43(a) of the Lanham Act, the plaintiff must allege (1) that it has a valid mark entitled to protection under the Act, and (2) that the defendant's actions are likely to cause confusion.  *See LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 649 (S.D.N.Y. 2016) (false designation of origin and unfair competition claims); *Bubble Genius*, 239 F. Supp. 3d at 601 (unfair competition claim); *Genometrica Research Inc. v. Gorbovitski*,

13

No. 11-cv-5802, 2013 WL 394892, at * 13 (E.D.N.Y. Jan. 31, 2013) (false designation of origin claim); *Toy Mfrs. of Am., Inc. v. Helmsley-Spear, Inc.*, 960 F. Supp. 673, 678 (S.D.N.Y. 1997) (false designation of origin claim).


a.      Protectable Trade Dress

Since "a trade dress that seeks to protect an idea, a concept, or a generalized type of appearance is generic, not distinctive, and therefore not subject to trade dress protection[,]" *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 542 (S.D.N.Y. 2003) (quotations and citation omitted); *see also Yurman Design*, 262 F.3d at 115-16 (holding that trade dress law does not "protect an idea, a concept, or a generalized type of appearance" and that "even a showing of secondary meaning is insufficient to protect product designs that are overbroad or 'generic' . . ." (quotations and citation omitted)), plaintiff must show "that the appearance of its several products is sufficiently distinct and unique to merit protection as a recognizable trade dress." *Landscape Forms*, 113 F.3d at 380; *accord Regal Jewelry Co., Inc. v. Kingsbridge Int'l, Inc.*, 999 F. Supp. 477, 486 (S.D.N.Y. 1998).   Since "[p]roduct design is driven primarily by the usefulness or aesthetic appeal of the object[,] trade dress protection for product design [] entails a greater risk of impinging on ideas as compared with protection of packaging or labeling." *Yurman Design*, 262 F.3d at 116.  Accordingly, courts must exercise "particular caution, when extending protection to product designs." *Id.* at 114 (quotations and citation omitted).

Initially, it cannot even be discerned from the second amended complaint whether the features plaintiff alleges constitutes its trade dress are properties of a line of products or of a

single product, as plaintiff inconsistently refers throughout its second amended complaint to its "GIANT SWAN™ inflatable swan pool toy," "inflatable swimming pool toys," "Trade Dress-designated pool toy product line," "pool toy and pool toy product line," "inflatable swimming pool products under the GIANT SWAN™ brand," "GIANT SWAN™ inflatable swimming pool toy products," "inflatable pool toy product line," "GIANT SWAN™ Trade Dress," "GIANT SWAN™ inflatable pool toy products," "GIANT SWAN™ pool toy product line," "GIANT SWAN™ inflatable pool toy product line," "inflatable swimming pool toy products," "inflatable swimming pool products marketed under the GIANT SWAN™ brand," "GIANT SWAN™ inflatable swan pool toy product," "GIANT SWAN™ Inflatable Swan Trade Dress," "GIANT SWAN™ pool toy product line," "inflatable swan pool toy products," "inflatable pool toy products," and "pool toy products."  (*See* SAC, ¶¶ 1, 7-21, 23-27, 29)[4]. Plaintiff's inconsistent allegations and apparent inability to specifically describe the features of its trade dress, and whether those features are properties of a line of products or of a single product, are clear indications that plaintiff's alleged design is "sketched at too high a level of generality," and, thus, is not subject to trade dress protection.  *See, e.g. Shevy Custom Wigs, Inc. v. Aggie Wigs*, No. 06-cv-1657, 2006 WL 3335008, at * 4 (E.D.N.Y. Nov. 17, 2006) (finding that the plaintiff's product design was "sketched at too high a level of generality" where, *inter alia*, it was "impossible to tell . . . whether the features [were] properties of a line of products . . . or of a single product," due to the inconsistent allegations in the complaint).  Further obfuscating the issue of the character and scope of plaintiff's trade dress is plaintiff's failure to clearly identify

---

[4]  Plaintiff also confusingly refers to its "GIANT SWAN™ packaging Trade Dress" in the second amended complaint, (SAC, ¶¶ 17-18), yet does not assert a claim against defendant with respect to its packaging trade dress.

defendant's allegedly infringing product or products because although plaintiff includes an image

of defendant's white swan pool float in the second amended complaint, (*see* SAC, ¶ 25), it

repeatedly alleges that defendant's "inflatable swan *and other inflatable pool toy products*

infringe [its] exclusive rights in its GIANT SWAN™ Trade Dress and dilute the distinctiveness

of that trade dress," (*id.*, ¶ 28 [emphasis added]; *see also Id.*, ¶¶ 29-30, 35-36, 45, 51, 57, 70 and

"Wherefore" clause on pp. 16-18), and also references defendant's black swan, flamingo and

Pegasus pool floats.  (*Id.*, ¶ 22).

       That pleading deficiency in the second amended complaint is further "compounded by the

generality of the alleged 'distinctive features' of [plaintiff's] product design[.]" *Shevy Custom

Wigs*, 2006 WL 3335009, at * 5.  Plaintiff provides only vague and overly broad descriptions of

its trade dress as consisting of, *inter alia*, (i) a base that has either a circular (round) or an

elliptical (oval) "periphery," "recessed interior configuration" and "a height in proportion to the

circumference of the base to provide a pleasing appearance," (SAC, ¶ 14(a)), with absolutely no

indication of what the height or circumference is; (ii) a "neck having a particular thickness and

height to be in aesthetic proportion to the base," (*id.*, ¶ 14(b)), again without any indication of

what the height or thickness is; (iii) "stylized appendages" having an "elongated tubular shape"

with an unidentified height and thickness "in aesthetic proportion to the base," as well as

"optional" "horizontal arcing lines" and "a generally conical upwardly inclined protuberance,"[5]

---

    [5]  The fact that an element is "optional" is "problematic because as a matter of logic,
*every* conceivable . . . [product] either has, or does not have [that element]."  *Maharishi Hardy*,
292 F. Supp. 2d at 546; *see also Classic Touch Décor, Inc. v. Michael Aram, Inc.*, No. 15-cv-
453, 2015 WL 6442394, at * 5 (E.D.N.Y. Oct. 23, 2015) (holding that a party "cannot claim
trade dress protection for an element that appears 'sometimes' or only 'in some instances,'
because it renders the presence of the element meaningless.")

(*id.*, ¶ 14(d)); (iv) a "signature color scheme," consisting of a "body" in one (1) of four (4) colors, *i.e.*, white, black, gold or pink, an orange "bill or beak surrounded by a shaped border that merges with the periphery of the eyes," and "two eyes each having a dark periphery and a light or white center," (*id.*, ¶ 14(c) and (f)); and (v) "an overall smooth and flexible texture," and it does not specify how those features are distinctive.  *See, e.g. Tracey Tooker*, 212 F. Supp. 3d at 434, *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 346-47 (E.D.N.Y. 2014); *National Lighting Co., Inc. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009); *Shevy Custom Wigs*, 2006 WL 3335009, at * 5; *BOA (UK) Ltd. v. Ideaville.Com LLC*, No. 02-cv-2473, 2002 WL 32093544, at * 1 (S.D.N.Y. Oct. 8, 2002).  Nor can the distinctive elements of plaintiff's trade dress be distilled from the single image of plaintiff's inflatable swan pool product included in the second amended complaint, *see, e.g. ID7D Co., Ltd. v. Sears Holding Corp.*, No. 3:11-cv-1054, 2012 WL 1247329, at * 10 (D. Conn. Apr. 13, 2012); *National Lighting*, 601 F. Supp. 2d at 562-63, particularly given the inconsistent allegations in the second amended complaint set forth above, as well as plaintiff's allegation that there are "*at least three* distinctive *versions* of GIANT SWAN™ Trade Dress."  (SAC, ¶ 18(a)) (emphasis added).

The case *R.F.M.A.S.*, 619 F. Supp. 2d 39, cited by plaintiff in support of its position, is distinguishable insofar as that case involved a claim, *inter alia*, that the defendant infringed the plaintiff's trade dress in the "look" of its Stella jewelry line, which "involves a higher degree of decorative or artistic elements" than other types of goods, such as an inflatable pool float.  *Id.* at 78.  Accordingly, the district court accepted "a more 'broadly framed' description" of the trade dress features of the plaintiff's jewelry line based upon the Second Circuit's "suggestion" in

*Yurman* "that when a product line's trade dress involves a higher degree of decorative or artistic elements, the plaintiff may rely more heavily on pictures of the trade dress or on broader descriptions, as long as the plaintiff ultimately points to the distinctive elements." *R.F.M.A.S.*, 619 F. Supp. 2d at 78-79. Unlike the products at issue in that case, plaintiff's product(s), *i.e.*, its inflatable swan pool float and/or other inflatable pool products, does not involve "a higher degree of decorative or artistic elements," and, thus, there is no basis for accepting an overly broad description of the design elements of its trade dress. Rather, plaintiff's inability to clearly articulate the distinctive elements of its trade dress that merit protection merely "indicate that its claim is pitched at an improper level of generality," *i.e.*, that plaintiff is seeking "protection for an unprotectable style, theme or idea." *Landscape Forms*, 113 F.3d at 381.

"Without . . . a precise expression of the character and scope of the claimed trade dress, . . . courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market[,] . . . [and] will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection." *Landscape Forms*, 113 F.3d at 381. Moreover, where, as here, "granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves[,]" trademark protection should be denied. *Id.* at 380; *see also Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 538 (S.D.N.Y. 2011) ("The requirement that trade dress be distinctive in order to enjoy protection under the Lanham Act reflects the fear that overbroad trade dress protection would result in ordinary product design creating a monopoly in the goods or services themselves.") Since plaintiff has not articulated a protectable trade dress in the second amended complaint, the branch of defendant's motion seeking dismissal of plaintiff's trade dress

infringement claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's trade dress infringement claim under Section 43(a) of the Lanham Act (first cause of action) is dismissed in its entirety with prejudice for failure to state a claim for relief.

Moreover, since plaintiff has not plausibly alleged that it has a protectable trade dress, the second amended complaint also fails to state a plausible claim for either unfair competition or false designation of origin under Section 43(a) of the Lanham Act.  *See, e.g. Bubble Genius*, 239 F. Supp. 3d at 601 (finding that the plaintiff failed to state a plausible unfair competition claim based on trade dress infringement because it failed to adequately plead that its trade dress was entitled to protection); *AJB Enters., LLC v. Backjoy Orthotics, LLC*, No. 3:16-cv-758, 2016 WL 7341702, at * 7-8 (D. Conn. Dec. 18, 2016) ("Without a valid trademark entitled to protection under the Lanham Act, whether in the form of an unregistered trademark, valid trade dress or other source of recognized protection, [the plaintiff] fails to state a claim for unfair competition based on the copying of its descriptive trademark and design features"); *Genometric Research*, 2013 WL 394892, at * 14 (dismissing the plaintiff's false designation of origin claims because it failed to allege that it had a mark, trade dress or trade name that was "valid and eligible for protection.")  Accordingly, plaintiff's false designation of origin and unfair competition claims under Section 43(a) of the Lanham Act (second and third causes of action, respectively) are dismissed in their entirety with prejudice for failure to state a claim for relief.

C.      Dilution and Trademark Infringement Claims

"To recover for trademark dilution . . . under 15 U.S.C. § 1125(c), [the plaintiff] must show that: (1) its mark is famous and distinctive; (2) [the defendant] is making commercial use

19

of the mark in commerce; (3) [the defendant's] use began after [the plaintiff's] mark became

famous; and (4) [the defendant's] use presents a likelihood of dilution of the distinctive value of

the mark." *Schutte Bagclosures Inc. v. Kwik Lok Corporation*, 193 F. Supp. 3d 245, 283

(S.D.N.Y. 2016), *aff'd*, — F. App'x —, 2017 WL 4994464 (2d Cir. Nov. 2, 2017). "Under

federal law, a higher degree of distinctiveness is required for dilution protection than to show a

protectable interest for trademark infringement." *Id.* (quoting *George Nelson Found. v.

Modernica, Inc.*, 12 F. Supp. 3d 635, 648 (S.D.N.Y. 2014)).

Similarly, a dilution claim under N.Y. Gen. Bus. Law § 360–*l*[6], requires the plaintiff to

show: "(1) that the trademark is truly distinctive or has acquired secondary meaning, and (2) a

likelihood of dilution either as a result of 'blurring' or 'tarnishment.'" *Bubble Genius*, 239 F.

Supp. 3d at 693 (quoting *Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F. Supp. 2d 441, 449

(S.D.N.Y. 2011)); *see also Sara Designs*, 234 F. Supp. 3d at 556 ("To prevail on a trademark

dilution claim brought under § 360–[*l*], a plaintiff must show (1) that it possesses a strong mark,

one which has a distinctive quality or has acquired a secondary meaning such that the trade name

has become so associated in the public's mind with the plaintiff that it identifies goods sold by

that entity as distinguished from goods sold by others, and (2) a likelihood of dilution by either

blurring or tarnishment." (quotations and citation omitted)).

To prevail on a trademark infringement claim under New York common law[7], the

---

[6]  Although plaintiff asserts its state law dilution claim under Section 360-e of the N.Y.
Gen. Bus. Law, that statute pertains to the duration and renewal of a registered trademark and,
thus, is inapplicable to plaintiff's claims.  Section 360-*l* of the N.Y. Gen. Bus. Law is the state
statute applicable to trademark or trade dress dilution claims.

[7]  Section 360-o of the N.Y. Gen. Bus. Law provides, "Nothing herein shall adversely affect
the rights or the enforcement of rights in marks acquired in good faith at any time at common law."

plaintiff must demonstrate "that its mark is a protectible [sic] trademark and that defendants' use

of the mark is likely to confuse consumers as to the source or sponsorship of plaintiff's product."

*Sara Designs*, 234 F. Supp. 3d at 556 (quotations and citation omitted); *see also Lorillard*

*Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005) ("[T]he

elements necessary to prevail on [a] cause[] of action for trademark infringement . . . under New

York common law mirror[s] the Lanham Act claims." (quotations and citation omitted)).

Since, for the reasons set forth above, the second amended complaint fails to state a claim

that plaintiff has a protectable trade dress, it also fails to state plausible claims of dilution under

either federal or state law, *see, e.g. Bubble Genius*, 239 F. Supp. 3d at 604 (dismissing the

plaintiff's state law dilution claim for failure to state a claim where the plaintiff had not pled

sufficient facts that would lead to an inference that its trade dress had acquired secondary

meaning or was otherwise protectable); *Schutte Bagclosures*, 193 F. Supp. 3d at 284 (dismissing

a state law trade dress dilution claim because the party could not show that it owned a protectable

trade dress); *Maharishi Hardy*, 292 F. Supp. 2d at 552 (dismissing the plaintiff's claims of

dilution under federal and state law because the court had determined that there was "no

protectable trade dress to be diluted in the first place"); *Elements/Jill Schwartz, Inc. v. Gloriosa*

*Co.*, No. 01-cv-904, 2002 WL 1492197, at * 7 (S.D.N.Y. July 15, 2002) (dismissing the

plaintiff's claims of trade dress dilution under the Lanham Act and N.Y. Gen. Bus. Law § 360-*l*

where the plaintiff failed to articulate a protectable trade dress); or for trademark infringement

under New York common law.  *See, e.g. Sara Designs*, 234 F. Supp. 3d at 556.  Accordingly, the

branches of defendant's motion seeking dismissal of plaintiff's Lanham Act dilution claim and

state law claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are granted to

the extent that plaintiff's federal and state law dilution claims (fourth and sixth causes of action,

respectively) and state law trademark infringement claim (fifth  cause of action) are dismissed in

their entirety with prejudice for failure to state a claim for relief.


      D.      Unjust Enrichment Claim

"Under New York law, a plaintiff may prevail on a claim for unjust enrichment by

demonstrating (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity

and good conscience require restitution." *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir.

2009) (quotations and citation omitted).  "The essence of such a claim is that one party has

received money or a benefit at the expense of another[,]" *Kaye v. Grossman*, 202 F.3d 611, 616

(2d Cir. 2000) (quotations and citation omitted), and "[t]he essential inquiry in any action for

unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant

to retain what is sought to be recovered[.]" *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d

415, 421, 334 N.Y.S.2d 388, 285 N.E.2d 695 (N.Y. 1972); *see also Regnante v. Securities &*

*Exch. Officials*, 134 F. Supp. 3d 749, 772 (S.D.N.Y. 2015) ("[I]n order to state an unjust

enrichment claim, a plaintiff must show that the defendant actually received a benefit[,] . . . [and

the] benefit must be both 'specific' and 'direct.'" (citations omitted)).  "Generally, courts will

look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the

benefit still remains with the defendant, if there has been otherwise a change of position by the

defendant, and whether the defendant's conduct was tortious or fraudulent[.]" *Paramount Film*,

30 N.Y.2d at 421, 334 N.Y.S.2d 388.  "[U]njust enrichment is not a catchall cause of action to be

used when others fail[] . . . [and] is available only in unusual situations when, though the

defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (N.Y. 2012).

The second amended complaint is bereft of any factual allegations from which it may reasonably be inferred that defendant received any specific and direct benefit at plaintiff's expense for which equity and good conscience require restitution.   Accordingly, the branch of defendant's motion seeking dismissal of plaintiff's unjust enrichment claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's unjust enrichment claim is dismissed in its entirety with prejudice for failure to state a claim for relief.


IV.    Conclusion

For the reasons set forth above, defendant's motion to dismiss plaintiff's claims against it in the second amended complaint in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted to the extent set forth herein and plaintiff's claims are dismissed in their entirety with prejudice for failure to state a claim for relief.  The Clerk of the Court shall enter judgment in accordance with this Order and close this case.

SO ORDERED.

_____
/s/
Sandra J. Feuerstein
United States District Judge


Dated: November 9, 2017
        Central Islip, New York

23